UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLIFFORD CASMENTO, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>VOLMAR CONSTRUCTION, INC.,<br><br>EFSTATHIA MARINAKIS, and<br><br>JOHN VOLANDES,<br><br>Defendants. | No. 20 CV __0944__<br><br>**COMPLAINT**<br><br>with<br><br>**JURY DEMAND** |

Plaintiff Clifford Casmento, Jr. ("Plaintiff" or "Mr. Casmento"), for his Complaint against Volmar Construction, Inc. ("Volmar"), Efstathia Marinakis and John Volandes alleges as follows:

**PRELIMINARY STATEMENT**

1. Mr. Casmento is an experienced and extensively-credentialed construction safety professional who was employed as Corporate Safety Director for Defendant Volmar.

2. Volmar operates a heavy construction site within the U.S. federal building at 26 Federal Plaza in Manhattan (the "26 Federal Plaza Site"), under a multi-million dollar contract to the United States of America.

3. In April and May 2019, Mr. Casmento complained to Volmar of critical safety violations at the 26 Federal Plaza Site. Among other things, unlicensed Volmar workers were illegally performing high-risk electrical work without supervision,` and had repeatedly cut into live wires; were handling Asbestos-Containing Material without inspection or abatement; and were allowing dust to penetrate ventilation equipment, posing serious environmental risks to federal personnel in occupied areas of the building. Moreover, Volmar was conducting its heavy and high-risk construction work at the 26 Federal Plaza Site without a full-time site safety officer required by law.

4. Mr. Casmento instructed Volmar's management and owners that work at the 26 Federal Plaza Site could not legally continue absent significant and expensive safety improvements.

5. Volmar put profits over safety. Its executives rejected Mr. Casmento's complaints. Then they fired him. And they threatened that if he reported Volmar's safety violations, the company would take legal action against him.

6. Defendants' conduct is textbook retaliation in violation of N.Y. Labor Law § 215.1.

7. Mr. Casmento seeks damages, attorney fees, and other relief described below.

## PARTIES

8. Plaintiff Clifford Casmento, Jr. is a natural person and a citizen of New Jersey.

9. Defendant Volmar is a corporation organized under the laws of the State of New York with its principal place of business at 4400 Second Avenue, Brooklyn, New York.

10. Defendant Efstathia Marinakis ("Marinakis") is and was the President of Volmar Construction, Inc.

11. On information and belief, Marinakis is a citizen of New York.

12. On information and belief, Marinakis has an ownership interest in Volmar.

13. Marinakis has the power to hire and fire Volmar employees and to control conditions of employment.

14. Marinakis made and participated in the decision to terminate Plaintiff's employment.

15. Defendant John Volandes ("Volandes") is and was Chairman and Secretary of Volmar Construction, Inc.

16. On information and belief, Volandes is a citizen of New York.

17. On information and belief, Volandes has an ownership interest in Volmar.

18. Volandes has the power to hire and fire Volmar employees and to control conditions of employment.

19. Volandes made and participated in the decision to terminate Plaintiff's employment.

## JURISDICTION AND VENUE

20. Plaintiff is a citizen of New Jersey. On information and belief, none of the Defendants is a citizen of New Jersey. The amount in controversy exceeds the sum or value specified by 28 U.S.C. § 1332.

21. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in this district – specifically, at the Jacob K. Javits Federal Building at 26 Federal Plaza in Manhattan.

## MR. CASMENTO WAS VOLMAR'S SAFETY DIRECTOR

22. In or about October 2016, Defendant Volmar hired Mr. Casmento as Corporate Safety Manager.

23. In or about October 2017, Defendant Volmar promoted Mr. Casmento to Corporate Safety Director.

24. At all relevant times, Mr. Casmento's duties as an employee and officer of Volmar included developing and executing health and safety plans according to applicable law.

25. At all relevant times, Mr. Casmento's duties as an employee and officer of Volmar included evaluating practices, procedures and facilities to assess worker safety risk and adherence to legal safety requirements.

26. At all relevant times, Mr. Casmento's duties as an employee and officer of Volmar included enforcement of corporate safety policies and practices.

27. At all relevant times, Mr. Casmento's duties as an employee and officer of Volmar included monitoring Volmar's compliance with legal safety requirements.

## VOLMAR PERFORMS CONSTRUCTION UNDER CONTRACT TO THE U.S. FEDERAL GOVERNMENT

28. Volmar is a construction company and general contractor.

29. Volmar is prime contractor on a project awarded by the General Services Administration ("GSA") of the United States federal government (the "GSA Contract") and worth more than $30 million.

30. On information and belief, the purpose of Volmar's work under the GSA Contract is to renovate space at 26 Federal Plaza used by (among other agencies) the Federal Bureau of Investigation; the Department of Health and Human Services; and the U.S. Army Corps.of Engineers.

31. Volmar performs heavy construction under the GSA Contract at a work site located at and in the federal building at 26 Federal Plaza in Manhattan.

32. At all relevant times, Mr. Casmento's duties included monitoring and overseeing safety plans and policies at the 26 Federal Plaza Site.

## MR. CASMENTO REPORTED SERIOUS SAFETY VIOLATIONS

33. On or about April 3, 2019, Mr. Casmento ordered a work stoppage and stand-down at the 26 Federal Plaza Site to address critical electrical safety violations, including unlicensed and untrained Volmar laborers working on live wires and electrical panels.

34. On or about April 30, 2019, and in the weeks that followed, Mr. Casmento informed Volmar management and personnel of the need for significant additional site safety measures at the GSA site, including:

    a.    Heavy fall protection and fall training for workers at elevation;

    b.    Pedestrian and traffic logistics planning;

    c.    Confined space planning and training for the safety of workers;

    d.    Silica-dust abatement and remediation;

    e.    Air quality planning;

f.        Inspection and planning related to removal of asbestos-containing materials ("ACM") identified in roof material under construction at the 26 Federal Plaza Site;

g.        Environmental safety planning;

h.        Assignment of a full-time Health and Site Safety Officer ("SSO") at the 26 Federal Plaza Site;

i.        Electrical training and supervision for personnel working with live wires and electrical boxes.

35.    Mr. Casmento made the foregoing safety recommendations and orders for the purpose of compliance with applicable health and safety laws and regulations.

36.    On or about May 14, 2019, Mr. Casmento met with Michael Marinakis, Volmar's VP of Operations. Mr. Casmento informed Michael Marinakis of his safety recommendations and underscored the need for a full-time SSO at the 26 Federal Plaza Site. Mr. Marinakis rejected Mr. Casmento's safety plans and insisted that no full-time SSO was required at the GSA Site.

37.    On or about May 17, 2019, Mr. Casmento met with Defendants Marinakis and Volandes to escalate to Volmar's upper management the safety requirements that Mr. Casmento had made to, and that had been rejected by, Volmar VP Michael Marinakis.

38.    Defendant Volandes informed Mr. Casmento that, contrary to law, Volmar would not assign a full-time SSO to the 26 Federal Plaza Site.

39.    Defendant Volandes suggested that Mr. Casmento train laborers to perform electrical work, even though Mr. Casmento explained that the work can only be supervised by specialized licensed electricians, and even though Mr. Casmento is not an electrician.

40.    On or about May 22, 2019, Mr. Casmento informed Defendant Marinakis that he intended to resign and "provide full explanation concerning [his] exit, in detail," unless Volmar took action to remedy violations at the GSA site.

41.    On or about May 28, 2019, GSA personnel notified Volmar of "outright unsafe practices" discovered during surprise inspections of the 26 Federal Plaza Site.

42. On or about May 29, 2019, Mr. Casmento informed Volmar management and GSA personnel that he would be on-site at the GSA Site on June 4, 2019 to conduct a thorough, floor-to-ceiling inspection; that he intended to impose discipline on any personnel responsible for safety violations; and that he would institute a site shutdown if violations were not corrected.

43. On or about May 30, 2019, Mr. Casmento sent Volmar management and GSA personnel a detailed agenda for a safety meeting to be held on June 4, 2019 at the GSA Site.

**VOLMAR TERMINATED MR. CASMENTO FOR REPORTING SAFETY VIOLATIONS**

44. On May 31, 2019, Defendant Marinakis emailed Mr. Casmento: "Monday [June 3, 2019] at 2:00pm please report to the main office for a mandatory meeting."

45. On June 2, 2019, Defendant Volandes informed Mr. Casmento by email that "Volmar has decided to [c]hange your status from employee to consultant. … ."

46. On June 3, 2019, Defendant Marinakis terminated Mr. Casmento in a meeting witnessed by Ms. Jazmine Ottley, a Volmar human resources officer.

47. Defendant Marinakis declined to provide a reason for terminating Mr. Casmento's employment.

48. Defendants terminated Mr. Casmento in retaliation for insisting that Volmar take safety measures in order to comply with its legal obligations.

49. Defendants terminated Mr. Casmento to prohibit him from conducting an investigation of safety violations at the GSA Site on June 4, 2019.

**ADMINISTRATIVE PROCEEDINGS**

50. On July 2, 2019, Mr. Casmento filed a formal written complaint with the Occupational Safety and Health Administration of the United States Department of Labor ("OSHA") setting forth his knowledge of Volmar's safety violations and seeking redress for Volmar's unlawful discrimination against him in violation of federal law.

## CLAIM FOR RELIEF

### COUNT I
### (Retaliation in Violation of New York Labor Law § 215.1)

51. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 50.

52. New York Labor Law § 200 imposes upon employers a general duty to protect the health and safety of their employees. "All machinery, equipment, and devices in" the workplace "shall be so placed, operated, guarded and lighted as to provide reasonable and adequate protection" to workers. *Id.* § 200.1.

53. New York Labor Law § 240.1 protects workers against unsafe conditions involved in work performed at heights. Under it, "[a]ll contractors and owners and their agents" must furnish "scaffolding, hoists, stays, ladders, slings … and other devices …" in a manner that "give[s] proper protection" to employees. *Id.*

54. New York Labor Law § 241 imposes upon "all contractors and owners and their agents" a duty to "provide reasonable and adequate protection and safety" to workers." New York Labor Law §241.6.

55. Plaintiff made complaints to his employer (the "Complaints") that the employer had engaged in conduct that Plaintiff reasonably and in good faith believed violated provisions of the New York Labor Law.

56. Defendants discriminated and retaliated against Mr. Casmento because he made the Complaints.

57. Plaintiff instituted or was about to institute a proceeding related to the New York Labor Law.

58. Defendants discriminated and retaliated against Mr. Casmento because he instituted or was about to institute a proceeding related to the New York Labor Law.

59. By discharging his duties as Volmar's Corporate Safety Director, and by insisiting on site safety measures at the GSA Site, Plaintiff exercised rights protected under the New York Labor Law.

60. Defendants discriminated and retaliated against Mr. Casmento because he exercised rights protected under the New York Labor Law.

61. The foregoing conduct constitutes retaliation in violation of New York Labor Law § 215.1(a).

62. As a result of Defendants' violations of law, Plaintiff suffered damages in an amount to be determined at trial.

63. Defendants' conduct has a high degree of moral culpability and manifests a conscious disregard for the rights and safety of others such that Defendants should be required to pay punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in its favor and against Defendants, containing the following relief:

A. An award of damages in an amount to be determined at trial, but which is not less than $75,000.00, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including lost wages;

B. An award of liquidated damages to the fullest extent permitted by law;

C. An award of Plaintiffs' costs incurred in this action, including its reasonable attorneys' fees, court costs, and all other expenses, to the fullest extent permitted by law;

D. An award of punitive damages in an amount sufficient to deter like conduct in the future; and

E. Such other and further relief as the Court may deem just and proper.

DATED:     February 4, 2020
           New York, New York

                                        MULLEN P.C.

                              By:       _____
                                        Wesley M. Mullen (WM1212)
                                        200 Park Avenue, Suite 1700
                                        New York, NY 10166
                                        (646) 632-3718
                                        wmullen@mullenpc.com

                                        COUNSEL FOR PLAINTIFF