UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                          :

CLIFFORD CASMENTO, JR.,            :

                            Plaintiff,        :

                                            :         20-cv-00944 (LJL)

        -v-                     :

                                            :        OPINION AND ORDER

VOLMAR CONSTRUCTION, INC. et al,  :

                                            :

                         Defendants.    :

                                            :

------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendant Volmar Construction Inc. ("Defendant" or "Volmar") moves, pursuant to Federal Rule of Civil Procedure 50(b), for judgment as a matter of law on the claims of Clifford Casmento, Jr. ("Plaintiff" or "Casmento") for failure to accommodate under the New York State Human Rights Law ("NYSHRL"), N.Y. Ex. Law § 296, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, and Plaintiff's award of punitive damages.  Dkt. No. 118.

      For the following reasons, the motion for judgment as a matter of law is denied.

## BACKGROUND

      Plaintiff brought various claims, including for discrimination and retaliation, against Volmar, Efstathia Marinakis ("Marinakis"), and John Volandes related to his employment at Volmar.

      On June 7, 2022, following a five-day trial, the jury returned a verdict for all defendants on Plaintiff's claims for disability discrimination and whistleblower retaliation in connection with Plaintiff's departure from Volmar in 2019.  Dkt. No. 120-4.  The jury, however, found that

Plaintiff had requested a reasonable accommodation for his disability and that Volmar failed to accommodate Plaintiff's disability under New York State and New York City law.  *Id.*  The jury awarded "zero dollars" in compensatory damages, "zero dollars" in nominal damages, and $300,000 in punitive damages to Plaintiff on this claim.  *Id.*

The evidence at trial as to Plaintiff's reasonable accommodation claim was the following:

Plaintiff testified that in 2017, he was hired by Volmar to work on a construction project. Dkt. No. 120-3 at ECF pp. 4–5.  His title when he was hired was corporate safety manager.  *Id.* at ECF p. 5.  In October or November of 2018, Volmar was promoted to corporate safety director. *Id.* at ECF pp. 5–6.  His job duties included identifying potential risks to worker safety and developing and executing health and safety plans in the workplace.  *Id.* at ECF pp. 7–8.  A health and safety plan is a blueprint for safety on a construction site and is required for every project in New York City.  *Id.* at ECF p. 9.  When Plaintiff was promoted, he was tasked with preparing four-to-five plans at a time.  *Id.* at ECF p. 13.  Plaintiff ceased to be employed by Volmar on June 3, 2019.  *Id.* at ECF p. 6.

Plaintiff testified that he suffers from heart disease and type 2 diabetes.  *Id.* at ECF p. 22. He stated that, as a result of his health conditions, he has a vision impairment and has a hard time reading small print.  *Id.* at ECF pp. 22–23.  Plaintiff described his vision as "terrible," and he noted that he wears glasses.  *Id.* at ECF p. 23.  He stated that his poor eyesight impacted his ability to do his job because "[a]side from site audits, reading heavy legal stuff on my iPhone.  I didn't."  *Id.*  He testified that he has glasses and has a license to drive.  *Id.* at ECF p. 37.  He stated that while he is able to read things on his cell phone, his cell phone is very large and he has the font maxed.  *Id.* at ECF pp. 37–38.

Plaintiff also testified that, as part of his job, he has to read "[f]ederal and local law, safety plans, JHAs" and that he reads these materials on his iPhone when he is "on the go." *Id.* at ECF p. 24. Plaintiff stated that he had work-related software on his phone, specifically, Safety Reports. *Id.* Plaintiff described Safety Reports as a "very detailed construction safety audit program." *Id.* He testified that he used the program in his job as Volmar's safety manager and director. *Id.*

When asked whether he told anyone at Volmar that he had problems with his eyesight, Plaintiff testified that he had, although he did not know exactly when that was. *Id.* Plaintiff was asked if he had asked Volmar to do anything to make it easier for him to see documents in connection with his work. *Id.* He responded that he had requested an iPad from Peter Volandes. *Id.* Plaintiff then testified that Peter Volandes had approved it and Vicky Bardabelles had ordered it for him; later, Vicky told him "it was in and [he] can come pick it up." *Id.* at ECF pp. 24–25. Plaintiff testified that he then went to Bardabelles's office and Bardabelles told him that Marinakis had it. *Id.* at p. 25. Plaintiff testified that Volmar never gave him the iPad as Marinakis denied it. *Id.* When asked what Marinakis had said to him when she denied it, Plaintiff said: "She told me—she told me to go get an eye exam, that I had eye insurance, and I did." *Id.*

Plaintiff testified that he had requested an iPad so he could see the screen better. He noted, "It would be a lot easier for me, less straining on my eyes." *Id.* at ECF p. 27. Plaintiff noted that he had a laptop computer and a large monitor. *Id.* at ECF p. 32. However, he testified that "safety reports is a mobile app, so you needed either a[n] iPhone or an iPad." *Id.* at ECF p. 32. He continued: "You can only operate safety reports in the back room, meaning if you

wanted to set things up for the inspection.  You can't operate it through the inspection.  It's a mobile app."  *Id.*

In addition to Plaintiff's testimony, the following email evidence was presented.

On February 9, 2019, Plaintiff emailed Peter Volandes, Michael Volandes, and Marinakis stating: "I'd like to purchase an I pad for Safety Reports currently using an I phone, very difficult to see—the cost should be under $600.00 please consider."  Dkt. No. 120-1 at ECF p. 15.  Peter Volandes responded that same day stating: "Please see Vicky B for a new phone."  *Id.*  Plaintiff then wrote to Bardabelles stating: "As per Peters approval please order me an iPad with high memory of at least 5 gig preferably a screen of 12 inches.  This will be used in conjunction with my iPhone, and must be WiFi and set up on my email."  *Id.* at ECF p. 5.

On February 24, 2018 at 11:27 a.m., Plaintiff wrote to Peter Volandes again stating: "Peter:  My iPad is being held by Vicky waiting for your approval.  I understand there was a miscommunication [. . .] as you thought I was ordering a phone.  Please advise!"  *Id.* at ECF p. 11.  Volandes responded at 12:04 p.m.: "I never received a request for an iPad."  *Id.*  Forty-five minutes later, Plaintiff forwarded his earlier email request to Peter Volandes, stating: "See correspondence regarding the request for an I pad."  *Id.* at p. 14.  On February 24, 2019 at 12:51 p.m., Peter Volandes responded:  "What is this for exactly?"  *Id.* at ECF p. 14.  At 5:26 p.m. that same day, Plaintiff wrote:

> Peter;
>
> If you look at my email you'll see that an I pad was requested. Your response indicated a phone approval.
>
> When I initiated safety reports over a year ago, we discussed the IPad and you approved it then.  Unsure if the company would like the program I elected to not order.  I wanted to see if the company felt it useful before it was ordered.
>
> This was is a great program, and will require an iPad to get the most out of the program.

4

We may also be able to store and view company training records through it, I'm waiting for a webinar from the company to illustrate that portion of the program.

*Id.* at ECF p. 10.  Plaintiff again wrote to Peter Volandes at 6:21 p.m. that same day:

Primarily for site audit and scoring, trend analytics.

To annunciate our efforts to monitor our sites, insurance carriers, clients, well received.

It also promotes training of our competent persons.  If you look at the report it directs you to osha regulation.  Which illuminates any discrepancy concerning requirements.  So in essence aside from insurance preference, it assists with development of safety cultures.  Programs such as this range from 5000.00 to 20,000.00

This costs us 800.00 per year . . . . but requires some footwork on my part, which will be made more efficient with the iPad.

*Id.* at ECF p. 13.

The evidence at trial also showed that the same day that Plaintiff had requested the iPad from Volmar—February 9, 2019—he had an eye exam.  *Id.* at ECF p. 26. The doctor's notes from that eye exam state:  "No diabetic retinopathy was present on exam.  I have advised Mr. Casmento of the ocular risk of systemic diabetes and stressed the important of tight glucose control and annual eye exams."  Dkt. No. 120-5 at ECF p. 2.  The doctor's notes also state: "Medical was remarkable for Type II diabetes under your care.  Ocular history was unremarkable.  Patient reports no ocular complaints" and listed Plaintiff's vision as 20/20.  *Id.*

Several Volmar employees testified they had never heard Plaintiff claim to have a visual disability.  *See, e.g.*, *id.* at ECF at pp. 42, 48.  For example, Jaszmine Ottley, an HR professional at Volmar, testified that Plaintiff had never requested disability accommodations from Volmar.  *Id.* at ECF p. 45.  Peter Volandes testified that he did not specifically recall Plaintiff asking for an iPad in or around February 2019.  *Id.* at ECF pp. 50–51.  Volandes also testified that "the need for an iPad is, at least in my opinion, something that would not have been required because

Cliff had a laptop and had a cellular phone, an iPhone. I didn't understand the need for an iPad in looking at these emails and getting refreshed as to this whole incident." *Id.* at ECF p. 51. Volandes also testified that Plaintiff had never advised him that he had a visual disability. *Id.* at ECF p. 52.

After the close of Plaintiff's case, Defendant made the following application under Federal Rule of Civil Procedure 50(a):

> Likewise, Mr. Casmento offered no evidence that he was discriminated against because of his disability. The sole evidence on this point is that he requested an iPad because, as he claims, he had difficulty reading safety reports on an iPhone. There is nothing about that request which suggests that it's connected to a disability or any evidence that Volmar thought he was making a reasonable accommodation in any stretch because of an alleged disability. He had a laptop, he had a monitor, he had an office, he could read safety reports there.

Dkt. No. 125-1 at ECF pp. 62–63. The Court responded that it would take the Rule 50 motion under advisement and rule on it at a later date. *Id.* at ECF p. 65.

## LEGAL STANDARD

The moving party's burden on a Rule 50 motion for judgment as a matter of law is "particularly heavy" when the "jury has deliberated in the case and actually returned its verdict." *Cross v. N.Y.C. Trans. Auth.*, 417 F.3d 241, 248 (2d Cir. 2005). The court may grant judgment as a matter of law only if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party." Fed. R. Civ. P. 50(a)(1). "The court must consider the evidence in the light most favorable to the non-movant and 'give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.'" *S.E.C. v. Ginder*, 752 F3d 569, 574 (2d Cir. 2014) (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012)). "A Rule 50 motion may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so

6

overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Id.* (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011)); *see Triolo v. Nassau Cty*, 24 F.4th 98, 105 (2d Cir. 2022). "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Deloreto v. Karengekis*, 104 F. App'x 765, 767 (2d Cir. 2004) (summary order) (quoting *Tolbert v. Queens Coll.,* 242 F.3d 58, 70 (2d Cir. 2001)); *see also ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) ("'The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury,' and 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" (citation omitted)).

"A post-trial Rule 50(b) motion for judgment as a matter of law is properly made only if a Rule 50(a) motion for judgment as a matter of law has been made before submission of the case to the jury." *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 117 (2d Cir. 2004). In the initial motion for judgment on the law, the moving party "*must specify* the judgment sought and *the law and facts that entitle the movant to the judgment*," Fed. R. Civ. P. 50(a)(2) (emphases added). "[T]he specificity requirement is obligatory." *Lore v. City of Syracuse*, 670 F.3d 127, 152 (2d Cir. 2012) (citation omitted). The initial motion for judgment as a matter of law "must at least identify the specific element that the defendant contends is insufficiently supported." *Tolbert*, 242 F.3d at 76. "The rationale is that the motion must be sufficient to inform the opposing party of the precise issue as to which more evidence is needed in order to warrant its submission to the jury." *Id.* at 76–77.

"A post-trial motion for judgment as a matter of law 'is limited to those grounds that were "specifically raised in the prior motion for [JMOL]."'" *AIG Glob. Sec. Lending Corp. v.*

*Banc of Am. Sec. LLC*, 646 F. Supp. 2d 385, 408 (S.D.N.Y. 2009), *aff'd*, 386 F. App'x 5 (2d Cir. 2010) (quoting *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir.1997)); *see McCardle*, 131 F.3d at 51 ("In sum, a posttrial motion for JMOL can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury."). "A Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a [judgment as a matter of law] argument based on the latter." *Lore*, 670 F.3d at 152–53; *see also Barkley v. Olympia Mortg. Co.*, 557 F. App'x 22, 27 (2d Cir. 2014) (summary order) ("A post-verdict motion for JMOL under Fed. R. Civ. P. 50(b) must be premised on grounds specified in a Rule 50(a) motion made prior to the submission of the case to the jury"). "The law is pellucid that a party's failure to move under Rule 50(a) has consequences. If that party later moves under Rule 50(b), the standard for granting judgment as a matter of law is elevated, and the motion may not properly be granted by the district court, or upheld on appeal, except to prevent manifest injustice." *ING Glob.*, 757 F.3d at 97. "Manifest injustice exists where a jury's verdict is wholly without legal support." *Id.*

## DISCUSSION

To establish a claim for failure to accommodate under NYSHRL and NYCHRL, a plaintiff must make the following showing:

> (1) plaintiff is a person with a disability under the meaning of the [statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 790 (S.D.N.Y. 2020) (quoting *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009)); *see, e.g., Lawtone-Bowles v. City of N.Y.*, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019) ("Courts apply the same standard for failure to accommodate cases under the ADA, Rehabilitation Act, NYSHRL, and

NYCHRL.").  "Regarding the third element, a reasonable accommodation is one that enables an individual with a disability who is qualified to perform the essential functions of that position . . . or to enjoy equal benefits and privileges of employment." *Sivio*, 436 F. Supp. 3d at 790.  "A request for accommodation need not take a specific form," so the "requests for accommodation may be in plain English, need not mention the statute, or the term reasonable accommodation and need not be in writing." *Watson v. Emblem Health Servs.*, 69 N.Y.S.3d 595, 598 (1st Dep't 2018).  "[T]he first step in providing a reasonable accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested." *Noel v. BNY-Mellon Corp.*, 2011 WL 4633884, at *2 (S.D.N.Y. Oct. 4, 2011), *aff'd*, 514 F. App'x 9 (2d Cir. 2013).

Defendant argues that Plaintiff has not proven his case for failure to accommodate and thus Defendant is entitled to judgment as a matter of law on five grounds: (1) Plaintiff did not establish that Volmar was on notice that his request for an iPad was one for a reasonable accommodation; (2) no reasonable juror could have found that Plaintiff was qualified to determine that he needed an iPad due to his alleged disability; (3) Plaintiff's eye examination demonstrated an unremarkable ocular history, further demonstrating that his need for an iPad was not connected to a visual impairment; (4) Plaintiff failed to show that the need to read Safety Reports on the go was an essential job function; and (5) the evidence is insufficient to support an award of punitive damages and, separately, the size of the jury's verdict must be reduced. Plaintiff argues that arguments two through five are forfeited as they were not specifically raised by Defendant at trial in its Rule 50(a) motion.  Dkt. No. 121 at 11–12.  Plaintiff further argues that ample evidence supports the jury's finding of liability and damages verdict.  *Id.* at 12–27.

## I.      Request for a Reasonable Accommodation

The first claim that Volmar seeks to make in its Rule 50(b) motion is that the evidence did not sufficiently support that Volmar was on notice that Plaintiff's request for an iPad was one for a reasonable accommodation for disability.  Specifically, Volmar argues that Plaintiff's communications to defendants made clear that his request was not tied to any visual impairment but was made for business efficiency purposes and Volmar employees testified at trial that they were not aware of Plaintiff's purported disability.  Dkt. No. 119 at 4–11.

As Plaintiff largely concedes, Dkt. No. 121 at 10–11 ("this ground is arguably preserved"), Defendant specified this ground for relief in their initial motion for judgment as a matter of law at trial and thus it is not forfeited.  In making their Rule 50(a) motion at trial, defendants stated that there is "no evidence that [Plaintiff] was discriminated against because of his disability" as "[t]here is nothing about that request [for an iPad] which suggests that it's connected to a disability or any evidence that Volmar thought he was making a reasonable accommodation in any stretch because of an alleged disability."  Dkt. No. 125-1 at ECF pp. 62–63.  This statement was sufficient to put Plaintiff on notice that defendants believed the evidence at trial did not support that Plaintiff's request for an iPad was one for a "reasonable accommodation" due to his disability.  *Id.*

There is little question that the evidence at trial on this point was far from overwhelming.  The email communications alone do not support that Volmar was put on notice of Plaintiff's disability.  *See Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 412 (S.D.N.Y. 2014) (employer must have notice of the disability).  While Plaintiff stated in his initial email to Peter Volandes, Michael Volandes, and Marinakis that he wanted "to purchase an I pad for Safety Reports," as he was using his "I phone to review" these reports and they were "very difficult to see," Dkt. No. 120-1 at ECF p. 15, that statement does not clearly communicate that Plaintiff

needed an iPad *due to a disability*.  Almost every person—even those without impaired

eyesight—are likely able to find long documents on an iPhone "difficult to see."  Furthermore,

when asked what the iPad was for exactly, Plaintiff never referenced his poor eyesight or any

other disability, but instead described the various business reasons why he needed it.  Dkt. No.

120-1 at ECF p. 10 ("This [is] a great program, and will require an iPad to get the most out of the

program."); *id.* at ECF p. 13 ("[B]ut requires some footwork on my part, which will be made

more efficient with the iPad.").

　　　　Yet, while the email evidence alone is insufficient, a reasonable juror could—considering

the evidence in the light most favorable to Plaintiff and drawing all inference in Plaintiff's

favor—find that Volmar was put on notice of Plaintiff's disability that the request was one for a

reasonable accommodation based on the totality of the evidence at trial.  At trial, Plaintiff

testified that when he went to pick up the iPad, Marinakis denied the request stating that he

should "go get an eye exam."  Dkt. No. 120-3 at ECF p. 25.  This comment could be interpreted

as reflecting Marinakis's awareness that Plaintiff had an eye impairment and that Plaintiff's

request for an iPad was related to that disability.  Plaintiff also testified that he had told people at

Volmar about the problems with his eyesight, although he did not know exactly when that was.

*Id.* at ECF p. 24.  This testimony provided a basis—albeit slim—upon which a reasonable juror

could find that Volmar was on notice of Plaintiff's disability, knew that his request for an iPad

was a request for a reasonable accommodation related to that disability, and nonetheless denied

the request without engaging in a "good faith interactive process."  *Noel*, 2011 WL 4633884, at

*2.

　　　　That none of the witnesses from Volmar testified that they were aware of Plaintiff's

disability does not impact this conclusion.  In deciding a Rule 50 motion, "the court must give

deference to all credibility determinations and reasonable inferences of the jury." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998); *see Greenaway v. Cnty. of Nassau*, 327 F. Supp. 3d 552, 560 (E.D.N.Y. 2018).  The jury may have determined that these witnesses were not credible and chosen instead to believe the testimony of Plaintiff that he had informed his fellow employees of his disability or to have drawn the inference from Marianakis's statement that she was aware of his disability.  The Court therefore denies Defendant's Rule 50 motion on this basis.

## II.      Plaintiff's Qualification to Determine That He Needed an iPad

The Court also rejects Defendant's argument that no reasonable juror could have found in favor of Plaintiff on his reasonable accommodation claim because Plaintiff's testimony alone was insufficient to substantiate the need for an iPad as an accommodation for that disability. Dkt. No. 119 at 11–12.  To start, Defendant raised a similar argument in its Rule 50(a) motion at trial and thus this argument is at least arguably preserved.  At trial, Defendant argued that "[t]here is nothing about that request which suggests that it's connected to a disability or any evidence that Volmar thought he was making a reasonable accommodation in any stretch because of an alleged disability."  Dkt. No. 125-1 at ECF pp. 62–63.  In other words, Defendant argued that Plaintiff, in making his request for an iPad, did not suggest that it was being made because of an alleged disability.  Now, in its Rule 50(b) motion, Defendant frames the argument slightly differently: Defendant argues that, regardless of whether Defendant communicated to Volmar that the iPad was necessary to accommodate his disability, the evidence does not establish that an iPad was needed as an accommodation for his disability in the first place.  This argument, albeit slightly different, is likely closely enough related to the "grounds specified in [Defendant's] Rule 50(a) motion made prior to the submission of the case to the jury."  *Olympia Mortg. Co.*, 557 F. App'x at 27.  Both arguments ultimately concern whether Plaintiff's request

for an iPad was sufficiently connected to his purported disability or was made for some other business purpose. *See TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 90 (2d Cir. 2005) (finding argument "subsumed" within another—although not specifically articulated—was preserved).

Even assuming it is preserved, the argument is unavailing. The evidence at trial sufficiently established that an iPad was needed to accommodate Plaintiff's impaired eyesight. Plaintiff testified at trial that Plaintiff used Safety Reports software to perform his job duties, Safety Reports is an application that only works on an iPhone or an iPad, and Plaintiff had difficulty reading Safety Reports on his iPhone due to his vision impairment. Dkt. No. 120-3 at ECF pp. 24, 32. Accordingly, Plaintiff testified that he requested an iPad to cause "less straining on [his] eyes," *id.* at ECF p. 27, and thus the requested accommodation "was required to accommodate [the] disability," *Vega v. Dep't of Educ.*, 2020 WL 6727803, at *6 (S.D.N.Y. Nov. 16, 2020). While most of this evidence came from Plaintiff's own testimony, Defendant cites to no case—nor is this Court aware of any—holding that Defendant's testimony alone is insufficient to substantiate the need for a reasonable accommodation for a disability, particularly where, as here, the requested accommodation (a larger screen) for the purported disability (poor eyesight) is a matter of common sense.

The single case that Defendant cites in favor of this argument is inapposite. Dkt. No. 119 at 11–12 (citing *Felix v. NYC Transit Auth.*, 324 F.3d 102, 106 (2d Cir. 2003)). In *Felix v. NYC Transit Authority*, the Second Circuit's decision turned on the fact that Plaintiff's requested accommodation (*i.e.*, not working on the subway) was insufficiently tied to the disability (*i.e.*, insomnia) to entitle her to protection under the Americans with Disabilities Act ("ADA"). 324 F.3d 102, 104–06. The Circuit based its decision on the fact that the ADA requires that an

13

employer provide reasonable accommodations for its employees only for disabilities that "substantially limit[] one or more of the major life activities." *Id.* at 104 (quoting 42 U.S.C. § 12102(2)(A)). The court noted that while Plaintiff's insomnia was a disability under the ADA as it substantially impaired a major life activity, Plaintiff's fear of working on the subway did not impair a major life activity and thus was not entitled to reasonable accommodation under the ADA.[1] *Id.* In this case, however, Plaintiff's claims arise under the NYSHRL and the NYCHRL, not the ADA, and "the NYSHRL and the NYCHRL define 'disability' more broadly than the ADA, [a]s neither requires any showing that an impairment substantially limit a major life activity." *Rodriguez v. Verizon Telecom*, 2014 WL 6807834, at *7 (S.D.N.Y. Dec. 3, 2014) (citation omitted). In addition, Plaintiff's requested accommodation is directly tied to his claimed disability under state law—not to some other impairment: Plaintiff claims that his disability is his poor eyesight and that he needed a larger screen to accommodate that disability. Accordingly, *Felix* is inapplicable.

## III.     Medical Evidence Regarding Plaintiff's Eye Impairment

Defendant also argues that its Rule 50(b) motion should be granted as Plaintiff's doctor determined that, with prescription lenses, Plaintiff's vision was corrected, further demonstrating that Plaintiff's requested accommodation was not connected to a visual impairment. Dkt. No. 119 at 12–13. In support of this argument, Defendant points to the results of Plaintiff's February 2019 eye exam, which noted that Plaintiff had an "unremarkable" ocular history, "healthy" optic nerves, and Plaintiff reported "no ocular complaints." *Id.* at 12; Dkt. No. 120-5

---

[1] The court also found that the fact that the fear of working on the subway and the insomnia stemmed from a "common traumatic origin" was not alone sufficient to compel a contrary result. *Id.*

at ECF p. 2.  Defendant also points to Plaintiff's testimony that he had a license to drive and could read things on his phone as long as the "font is big enough."  Dkt. No. 119 at 12–13.

In making this argument, Defendant does not appear to contest that Plaintiff has a disability under New York State and New York City law.[2]  Instead, Defendant argues that because Plaintiff had glasses and already had an iPhone on which he could use the Safety Report program, his request for an iPad was not sufficiently connected to his requested reasonable accommodation.  Contrary to Plaintiff's claim, this argument is likely preserved for the reasons discussed above: in their Rule 50(a) motion at trial, Defendants stated that the evidence did not suggest that the request was "connected to a disability" and that there was no "evidence that Volmar thought he was making a reasonable accommodation in any stretch because of an alleged disability."  Dkt. No. 125-1 at ECF pp. 62–6.  This argument likely was sufficient to put Plaintiff on notice that Defendant did not believe Plaintiff had presented sufficient evidence of a nexus between the accommodation requested and Plaintiff's claimed disability.

The Court, nonetheless, rejects this argument for setting aside the jury's verdict.  While it is true that the medical records indicated that the patient reported "no ocular complaints" and his "[o]cular history was unremarkable," Dkt. No. 120-5, Plaintiff testified that he has "terrible vision" and "terrible reading," even while wearing glasses.  Dkt. No. 125-1 at ECF p. 39.  He noted that the doctor's notes should be read only as a "comparison to [his] last visit," that he gets "a visit every year" and that the notes express that his vision had "only gotten a little worse"

---

[2] If Defendant did attempt to make this argument, it would be forfeited as it was not specifically raised in Defendant's Rule 50(a) motion at trial.  *See Champagne v. Columbia Dental, P.C.*, 2022 WL 168967, at *6 (D. Conn. Jan. 19, 2022) (argument "there was insufficient evidence that Defendant had notice of a hostile work environment" was waived as it was a different argument from argument in Rule 50(a) motion at trial that "there was insufficient evidence to establish that a hostile work environment existed").

since last year, and are not intended to express that his vision is "fine." *Id.*  Plaintiff also testified

that he was not sure why his vision was listed as 20/20.  Dkt. No. 120-3 at ECF p. 37.  Plaintiff

further testified that he goes to the doctor every year for a "diabetic eye exam," and that his

eyesight impacted his job in so far as he had to read "heavy legal stuff on [his] iPhone."  Dkt.

No. 125-1 at ECF p. 26.  Plaintiff also testified that he needed an iPad to "see the screen better"

and it would be "a lot easier for me, less straining on my eyes," and that while he can read on his

cell phone, he has the "font maxed" and can only "read texts and emails if the font is big

enough."  *Id.* at ECF at pp. 30, 41.

From this testimony, a reasonable juror—crediting Plaintiff's testimony entirely—could

have concluded that Plaintiff had difficulty reading legal documents (such as Safety Reports) on

his cell phone even while wearing glasses, that this inability to read legal documents on his

phone impacted his ability to perform his job, and that this difficulty reading documents on his

cell phone stemmed from his eye impairment.  The Court therefore declines to dismiss the jury's

verdict on this basis.[3]

## IV.    Essential Job Function

Defendant argues that Plaintiff failed to establish that the use of the Safety Reports

application was an essential job function requiring accommodation.  Dkt. No. 119 at 13–15.

Specifically, Defendant argues that Plaintiff only used his iPhone to read safety-related

documents when he was "on the go," but never explained how often he was "on the go."  *Id.*

Defendant also argues that Plaintiff had performed his job duties for over a year without the iPad

and without the Safety Reports program and had been promoted during his time at Volmar.  *Id.*

---

[3] The cases Defendant cites in support of this argument are distinguishable as each concerns instances in which defendant offered plaintiff a reasonable accommodation, just not plaintiff's preferred accommodation.  *See Hamedl v. Verizon Commc'ns, Inc.*, 557 F. App'x 68, 70 (2d Cir. 2014) (summary order); *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 263 (S.D.N.Y. 2014) (same).

The argument that the use of Safety Reports on the go was not related to an essential job function was not made in defendants' Rule 50(a) motion at trial.  In fact, if anything, defendants' argument at trial appeared to presume that reading Safety Reports was part of Plaintiff's job.  In arguing that an iPad was not necessary, defendants stated: "He had a laptop, he had a monitor, he had an office, he could read safety reports there."  Dkt. No. 125-1 at ECF pp. 62–63.  Defendants thus did not specifically raise this argument in its Rule 50(a) motion.  *See Haddad*, 131 F.3d at 51 ("In sum, a posttrial motion for JMOL can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury."); *Galdieri-Ambrosini*, 136 F.3d at 286 ("[T]he JMOL motion must at least identify the specific element that the defendant contends is insufficiently supported."); *Columbia Dental, P.C.*, 2022 WL 168967, at *6 (argument "there was insufficient evidence that Defendant had notice of a hostile work environment" was waived as it was a different argument from argument in Rule 50(a) motion at trial that "there was insufficient evidence to establish that a hostile work environment existed.").  Accordingly, the standard for granting judgment as a matter of law on this basis is elevated and the Court may not grant it except to prevent manifest injustice, which exists "where a jury's verdict is wholly without legal support."  *ING Glob.*, 757 F.3d at 97.

No manifest injustice is present here.  First, Plaintiff's argument contorts the law.  While Plaintiff must prove that "with reasonable accommodation, plaintiff could perform the essential functions of the job at issue," *Sivio*, 436 F. Supp. 3d at 790 (citation omitted), there is no requirement under New York State or New York City law that Plaintiff also prove that without an accommodation she was *unable* to perform essential functions of the job.  *Cf. Davis v. City of New York Health & Hosps. Corp.*, 2011 WL 4526135, at *4, 6 (S.D.N.Y. Sept. 29, 2011), *aff'd sub nom. Davis v. New York City Health & Hosps. Corp.*, 508 F. App'x 26 (2d Cir. 2013)

(stating that ADA requires employee to be "otherwise qualified to perform the essential

functions of the job, *with or without reasonable accommodation*" and "[t]he NYS and NYC

Human Rights Laws have very similar requirements with respect to the ADA's 'essential

functions' test" (emphasis added)).  An employee who is hearing-impaired may still be able to

perform all essential elements of his or her job with great difficulty, and nonetheless be entitled

to reasonable accommodations to mitigate that difficulty.  Instead, New York State and New

York City law only require that the accommodation relate to Plaintiff's duties as part of his job

or occupation:  New York State law defines "reasonable accommodation" as "actions taken

which permit an employee . . . to perform in a reasonable manner *the activities involved in the*

*job or occupation* sought or held" and includes "support services for persons with impaired

hearing or vision."  N.Y. Exec. Law § 292(21-e) (emphasis added).  New York City law is even

broader and defines a reasonable accommodation as "such accommodation that can be made that

does not cause undue hardship in the conduct of the covered entity's business."  N.Y.C. Admin.

Code § 8–102.  Thus, even if Plaintiff were able to perform all essential functions of his job

without an iPad (through maximizing the font on his cell phone and straining his eyes), that fact

alone would not bar him from asserting a reasonable accommodation claim under New York

State or New York City law.[4]

Moreover, Plaintiff provided evidence from which a reasonable juror could have

concluded that he needed an iPad to use Safety Reports as part of his job.  Dkt. No. 120-3 at ECF

---

[4] The cases Defendant cites in support of this claim are distinguishable.  *See Sosa v. N.Y.C. Dep't of Educ.*, 819 F. App'x 30, 33 (2d Cir. 2020) (summary order) (holding that plaintiff failed to prove that she was suffering a disability covered by the ADA at the time of her request and that her requested accommodation did not flow from her injury); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 406 (S.D.N.Y. 2017) (record was silent as to whether need for the accommodation flowed from plaintiff's disability).

p. 24.  Plaintiff described Safety Reports as a "very detailed construction safety audit program" and testified that he used the program in his job as Volmar's safety manager and director.  *Id.* Plaintiff also testified that this program worked only on an iPhone or an iPad, that he had trouble reading legal documents on an iPhone, and that he frequently traveled—or was "on the go"—as part of his duties at Volmar.  *See, e.g.*, Dkt. No. 100 at ECF p. 25 ("If I wasn't preparing the plan, I was traveling to the sites."); *id.* (stating that he was visiting sites "maybe 20 percent of the time").  Accordingly, the evidence, construed in favor of Plaintiff, supports that Safety Reports was part of his job responsibilities, that he was frequently traveling as part of his job, and that he needed either an iPad to use it in light of his impairment.

## V.     Punitive Damages

Finally, Defendant argues that Plaintiff is not entitled to punitive damages on his failure to accommodate claim as the evidence did not support a finding of "exceptional misconduct."  In support of this claim, Defendant argues that Plaintiff at most established that "he requested an iPad and did not receive one" and notes that Plaintiff could read on his iPhone by using larger fonts, Volmar had already provided Plaintiff with alternative resources with larger screens (such as a desktop computer), Volmar employees testified that they were unaware that Plaintiff had any visual impairment, and Plaintiff's communications about the iPad merely conveyed a preference for it.  Dkt. No. 119 at 16–17.  Alternatively, Defendant argues that the size of the punitive damages award should be reduced based on Constitutional and state law grounds.  *Id.* at 18–21.

As to Defendant's argument for a reduction in the size of the punitive damages award, while Defendant brings its motion under Rule 50(b), a request for a reduction in the amount of

damages "come[s] under the umbrella of Rule 59," not Rule 50.[5]  *Allam v. Meyers*, 906 F. Supp.

2d 274, 281 (S.D.N.Y. 2012) (citation omitted); *see Hill v. Airborne Freight Corp.*, 212 F. Supp.

2d 59, 65 (E.D.N.Y. 2002), *aff'd*, 93 F. App'x 260 (2d Cir. 2004) ("Excessive monetary awards

come under the umbrella of Rule 59.").  "If a district court finds that a [punitive damages]

verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the

practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's

accepting damages in a reduced amount."  *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996).  It

may not reduce the damages amount, without providing plaintiff an opportunity for a new trial.

*See Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995) ("It is not among the

powers of the trial court, where the jury has awarded excessive damages, simply to reduce the

damages without offering the prevailing party the option of a new trial."); *Shea v. Icelandair*,

925 F. Supp. 1014, 1020 (S.D.N.Y. 1996) ("A district court that finds a verdict to be excessive

does not have the power simply to reduce the damage award.").

        Defendant, however, has stated that it does not request relief under Rule 59.  Defendant

made clear at oral argument that it is not seeking "a new trial on th[is] point," Oral Argument

(Oct. 13, 2022) Tr. at 11, and that its motion is one for judgment as a matter of law.  In addition,

---

[5] Defendant argued that it could move for a reduction of damages under Rule 50 because
Defendant "believe[d] that that motion for a new trial and the concept of remittitur is more
appropriate when one is arguing that the facts present . . . did not warrant that award of damages[
a]nd you give that back to, potentially, a jury to decide."  *Id.*  Defendant stated that it was instead
arguing that "there's a constitutional limit, which we're asking the Court, as a matter of law,
following *BMW v. Gore*, to apply here and enter a verdict, if you get to that point, on an
amount."  *Id.*  This distinction, however, is incorrect and is belied by the numerous cases in this
Circuit, finding that Rule 59, not Rule 50, is the proper vehicle for motions to reduce damage
awards as unconstitutional in light of *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 563 (1996).
*See, e.g.*, *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996); *Tretola v. Cnty. of Nassau*, 14 F.
Supp. 3d 58, 86–90 (E.D.N.Y. 2014); *Thomas v. Kelly*, 903 F. Supp. 2d 237, 265–70 (S.D.N.Y.
2012); *Funk v. F & K Supply, Inc.*, 43 F. Supp. 2d 205, 228–29 (N.D.N.Y. 1999).  Defendant has
pointed to no case to the contrary.

Plaintiff stated at oral argument that it would not agree to a remittitur reducing the amount of

punitive damages but would instead request a "a new trial on all issues." *Id.* at 20–21.  Thus, the

Court declines to address whether relief is warranted under Rule 59: Defendant does not invoke

that rule and a new trial would almost certainly result if Defendant were successful in arguing

that the punitive damages award was excessive and Defendant has stated that it is not seeking a

new trial.  Instead, the Court holds that it "does not have the power simply to reduce the damage

award" as excessive under Rule 50 and rejects Defendant's argument on that basis.  *Icelandair*,

925 F. Supp. at 1020; *see Norse Sys., Inc.*, 49 F.3d at 96.

Defendant's *other* argument on punitive damages—*i.e.*, that the evidence was insufficient

to support an award of punitive damages—may be brought under Rule 50(b).  *See Tolbert*, 242

F.3d at 69; *Kuper v. Empire Blue Cross & Blue Shield*, 2003 WL 359462, at *4 (S.D.N.Y. Feb.

18, 2003).  Under the NYCHRL, punitive damages may be awarded where "the wrongdoer has

engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious

disregard of the rights of others or conduct so reckless as to amount to such disregard.'"  *Chauca*

*v. Abraham*, 89 N.E.3d 475, 481 (N.Y. 2017) (citation omitted).  The New York Court of

Appeals has stated that this standard "requires neither a showing of malice nor awareness of the

violation of a protected right, representing the lowest threshold, and the least stringent form, for

the state of mind required to impose punitive damages." *Id.*[6]

---

[6] Although the jury form noted that it was awarding punitive damages both pursuant to New
York State and New York City law, the "the NYSHRL does not provide for punitive damages,"
except in cases of housing discrimination.  *Garcia v. Comprehensive Ctr.*, 2019 WL 8274296, at
*8 (S.D.N.Y. Nov. 21, 2019), *report and recommendation adopted*, 2020 WL 1435002
(S.D.N.Y. Mar. 24, 2020); *see* N.Y. Exec. Law § 297(9); *Mayo-Coleman v. Am. Sugar Holdings,
Inc.*, 2018 WL 2684100, at *2 (S.D.N.Y. June 5, 2018); *Manswell v. Heavenly Miracle Acad.
Servs., Inc.*, 2017 WL 4075180, at *2 n.3 (E.D.N.Y. Sept. 14, 2017).  Accordingly, the Court will
only assess whether the evidence was sufficient to support the jury's award of punitive damages
under New York City law.

The argument that the evidence presented was insufficient to support a punitive damages award, however, was not asserted by defendants in their initial motion for judgment as a matter of law and thus is forfeited under the Second Circuit's decision in *Tolbert*, 242 F.3d 58.  In *Tolbert*, the Second Circuit declined to address defendants' challenge as to the sufficiency of the evidence of punitive damages after concluding that it was not raised in defendants' Rule 50(a) motion at trial.  *Id.*  Here, as in *Tolbert*, "there was no mention whatever in [the Rule 50(a) motion [at trial] of punitive damages" "nor did defendants suggest that there was insufficient proof that they had a mental state that could justify an award of such damages."  *Id.* at 77.  While Defendant contends that it raised this argument in its Rule 50(a) motion at trial by arguing that Plaintiff "offered no evidence that he was discriminated against because of his disability," and thus raised the issue of "animus or intent," Dkt. No. 125 at 6, an almost identical contention was rejected in *Tolbert*.  242 F.3d at 77 (finding that judgment as a matter of law motion on punitive damages was not preserved even though defendant argued at trial that "Tolbert had failed to prove that the discrimination was based on race.").  Defendant also contends that this argument was preserved for purposes of its Rule 50(b) motion because it objected to the inclusion of a punitive damages charge on the basis that "punitive damages are not available in this case."  Dkt. No. 125 at 1 (quoting Tr. at 402:6-12).  However, in making that statement, Defendant argued that punitive damages were not available *as a matter of law*, not that the *evidence was insufficient* to support an award of punitive damages.  Dkt. No. 102 at 402; Oral Argument (Oct. 13, 2022) Tr. at 4.  In addition, that statement was made not as part of defendants' Rule 50(a) motion at trial but instead during a discussion of the appropriate jury charge.  *See Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) (holding that arguments raised in motion in limine not in formal Rule 50(a) motion were not properly brought).  This

reference to punitive damages thus was not sufficient to alert Plaintiff of "the precise issue as to which" Defendant now argues "more evidence [was] needed in order to warrant its submission to the jury." *Tolbert*, 242 F.3d at 76.

This argument also is unavailing regardless of whether or not it was forfeited. The evidence presented at trial, construed in the light most favorable to Plaintiff and drawing all inferences in Plaintiff's favor, was sufficient to support the award of punitive damages under NYCHRL. Contrary to Defendant's contention, the evidence did not merely show that Plaintiff asked for a laptop and was denied it. Instead, as discussed above, the evidence—construed in favor of Plaintiff—indicated that Plaintiff had requested the iPad as an accommodation for his poor eyesight and Marinakis knew of or consciously disregarded Plaintiff's disability when she refused to provide Plaintiff with an iPad: Plaintiff testified that when he went to pick up the iPad, Marinakis denied the request stating that he should "go get an eye exam." Dkt. No. 120-3 at ECF p. 25. Thus, there was evidence upon which the jury could have find that Volmar understood "there to be a connection between the request for an iPad and a medical issue." Dkt. No. 125 at 6. Plaintiff also testified that he had told people at Volmar about his problems with his eyesight. *Id.* at ECF p. 24. The evidence further indicated that while Plaintiff had a desktop computer and other larger screens, those devices did not work for the use of Safety Reports— which only operated on an iPhone or iPad. Accordingly, the evidence supported that Volmar engaged in at least "recklessness" or "conscious disregard" of Plaintiff's rights when it refused to at least engage in an interactive process with Plaintiff regarding his requested accommodation. *Chauca*, 89 N.E.3d at 481. The jury's award of punitive damages was thus not legally insufficient and the Court declines to overturn it on that basis. *See* Fed. R. Civ. P. 50(a)(1).

## CONCLUSION

For these reasons, the motion judgment as a matter of law is DENIED.

23

The Clerk of Court is respectfully directed to close Dkt. No. 118.


SO ORDERED.


Dated: October 28, 2022
       New York, New York                    _____
                                                    LEWIS J. LIMAN
                                             United States District Judge