UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                            :

CLIFFORD CASMENTO, JR.,                    :

                      Plaintiff,               :

                                            :                    20-cv-944 (LJL)

       -v-                             :

                                            :                  OPINION AND ORDER

VOLMAR CONSTRUCTION, INC., et al.,    :

                                            :

                      Defendants.          :

                                            :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Clifford Casmento, Jr. ("Plaintiff" or "Casmento") moves for an award of
attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d), New York Executive Law
§ 297(10), and New York City Administrative Code § 8-502(g), and entry of final judgment
pursuant to Federal Rule of Civil Procedure 58.  Plaintiff seeks an award of attorneys' fees in the
amount of $426,540.00, plus costs in the amount of $35,572.06, for a total of $462,112.06.  Dkt.
Nos. 130, 137.[1]

## BACKGROUND

Familiarity with the prior proceedings in this matter is assumed.

Plaintiff filed this lawsuit against Volmar Construction, Inc. ("Volmar") and its
principals, Efstathia Marinakis and John Volandes (collectively, "Defendants"), on February 4,
2020.  Dkt. No. 1.  He alleged a single count of retaliation in violation of New York Labor Law
§ 215.1.  *Id.* at 7.  Plaintiff alleged that he ordered a work stoppage at Volmar's worksite at 26

---

[1] Plaintiff's opening brief requested $419,095.00 in attorneys' fees, plus $35,572.06 in costs, for
a total of $454,667.06.  Dkt. No. 130.  This figure includes the $7,445.00 in additional fees
Plaintiff claims to have incurred since its opening brief was filed.  Dkt. No. 137 at 16 n.6.

Federal Plaza on or about April 3, 2019 to address critical safety violations; that on or about

April 30, 2019, and in the weeks that followed, he informed Volmar management of the need for

significant additional safety measures at the site, and that on June 2 and June 3, 2019, Volmar

terminated his employment.  *Id.* ¶¶ 33–34, 45–46.  Plaintiff claims that Defendants terminated

his employment to prevent him from conducting an investigation of safety violations on June 4,

2019 and in retaliation for his insisting that Volmar take safety measures in order to comply with

its legal obligations.  *Id.* ¶¶ 48–49.

Plaintiff filed a First Amended Complaint on December 29, 2020.  Dkt. No. 51.  That

complaint contained the same allegation of retaliation in violation of New York Labor Law

§ 215.1.  *Id.* ¶¶ 73–85 (Count One).  It also alleged that Defendants retaliated against Plaintiff in

violation of New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, due to

his opposition to Defendants' non-compliance with law, *id.* ¶¶ 89–91 (Count Three), and

violated New York City Human Rights Law ("NYCHRL") by retaliating against him due to his

opposition to the unlawful employment practices of Defendants, *id.* ¶¶ 95–97 (Count Five).  The

First Amended Complaint also added a claim of discrimination and failure to accommodate

based on Plaintiff's alleged visual disability, his poor eyesight, in violation of NYSHRL, N.Y.

Exec. Law § 296, *id.* ¶¶ 86–88 (Count Two), and NYCHRL, N.Y.C. Admin. Code § 8-107, *id.* ¶¶

92–94 (Count Four).

Trial of the case began on June 1, 2022, and concluded on June 7, 2022.  On June 7,

2022, the jury returned a defense verdict on all counts related to the termination of Plaintiff's

employment.  Dkt. No. 120-4.  In particular, the jury returned a defense verdict on Counts I, III,

and V of Plaintiff's First Amended Complaint, finding that Plaintiff had not proved his case that

Defendants demoted or terminated him in retaliation for reporting safety violations of the New

York Labor Law or for seeking accommodation for his protected visual disability. *Id.* The jury also returned a partial defense verdict on Counts II and IV, finding that Plaintiff had not proved that the individual defendants failed to accommodate his disability. *Id.* However, the jury returned a Plaintiff verdict against Volmar on Counts II and IV, finding for Plaintiff on his claims of failure to accommodate under NYSHRL and NYCHRL. *Id.* The jury awarded him $300,000 in punitive damages without awarding him any compensatory or nominal damages. *Id.*

On October 28, 2022, the Court denied Volmar's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). Dkt. No. 129. While the Court found that the evidence at trial was "far from overwhelming," *id.* at 10, it concluded that Defendants had failed to satisfy their "heavy" burden in demonstrating that there was insufficient evidence to support the jury verdict, *id.* at 6 (citation omitted). In reaching its holding, the Court pointed to the following evidence that supported the verdict: Plaintiff testified that he had terrible vision and wears glasses, that he had told Defendants that he had problems with his eyesight, that he had requested an iPad from Defendants in order to better view documents in connection with his work, and that—after initially telling him that they would provide him an iPad—Defendants ultimately denied him that accommodation. *Id.* at 2–5, 10–11. Furthermore, Plaintiff testified that when Defendant Marinakis denied him the iPad, Marinakis stated that he should "go get an eye exam." *Id.* at 11. This testimony occupied portions of approximately six pages of the trial transcript of Plaintiff's testimony. The Court also noted that Plaintiff had offered email chains in which he requested the iPad and later reiterated that request, Dkt. No. 120-1, as well as one medical record from an eye examination that Plaintiff had undergone, Dkt. No. 120-5. There was no other affirmative evidence supporting the claims—the few defense witnesses who were

asked about Plaintiff's eyesight or the request for an iPad testified that Plaintiff had never requested a disability accommodation or mentioned a visual disability.

On November 4, 2022, Plaintiff filed his motion for an award of attorneys' fees and costs and for entry of final judgment, along with supporting papers. Dkt. Nos. 130–32. On December 2, 2022, Defendants filed their memorandum of law in opposition to the motion for attorneys' fees and costs as well as a supporting declaration. Dkt. Nos. 135–36. On December 9, 2022, Plaintiff filed a reply memorandum of law and reply affirmation in support of his motion. Dkt. Nos. 137–38.

## DISCUSSION

Plaintiff seeks an award of attorneys' fees in the amount of $426,540.00, plus costs in the amount of $35,572.06, for a total of $462,112.06, as well as entry of final judgment pursuant to Federal Rule of Civil Procedure 58. Dkt. Nos. 130, 137. The Court first discusses the fee request, then turns to costs, and finally to entry of final judgment.

## I.   Attorneys' Fee Request

The NYCHRL provides that in "any civil action . . . the court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs." N.Y.C. Admin. Code § 8-502(g). The NYSHRL allows "the court . . . in its discretion [to] award reasonable attorney's fees to any prevailing or substantially prevailing party." N.Y. Exec. Law § 297(10).[2] The Court applies the same standards to requests for fees under city and state law as

---

[2] Plaintiff notes that the NYSHRL was amended in 2019 to expand the availability of attorneys' fees for all forms of employment discrimination under the NYSHRL. Dkt. No. 131 at 2 n.2. This amendment occurred prior to the filing of Plaintiff's complaint in this action but after the unlawful conduct occurred, *id.*, and thus there is thus some uncertainty as to whether it would apply in this case. Defendants, however, do not appear to dispute that attorneys' fees may be awarded to Plaintiff under the NYSHRL. Moreover, determination of this issue has no impact on Plaintiff's entitlement to fees and costs, as Plaintiff is nonetheless entitled to attorneys' fees under the NYCHRL. Accordingly, the Court does not address this issue.

it would to claims under the federal civil rights statutes.  *See Knox v. John Varvatos Enterprises Inc.*, 520 F. Supp. 3d 331, 338 (S.D.N.Y. 2021), *aff'd sub nom. Chaparro v. John Varvatos Enterprises, Inc.*, 2021 WL 5121140 (2d Cir. Nov. 4, 2021); *Angulo v. 36th Street Hospitality LLC*, 2020 WL 4938188, at *15 (S.D.N.Y. July 31, 2020).  "While a district court retains discretion to determine what constitutes a reasonable fee, 'this discretion is not unfettered.'"  *Emamian v. Rockefeller Univ.*, 2022 WL 2056275, at *11 (S.D.N.Y.  Feb. 9, 2022) (quoting *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

In determining a reasonable fee, "[t]he district court must ascertain whether 'the requested rates are in line with those prevailing in the community *for similar services by lawyers of reasonably comparable skill, experience and reputation*.'"  *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (emphasis in original).  "[T]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021) (quoting *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019)).

The Court also considers the *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 187 n.3 (2d Cir. 2008)).

"A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018) (quoting *E.F. ex rel. N.R. v. N.Y. City Dep't of Educ.*, 2014 WL 1092847, at * 3 (S.D.N.Y. Mar. 17, 2014)); *see also C.B. v. N.Y. City Dep't of Educ.*, 2019 WL 3162177, at *5 (S.D.N.Y. July 2, 2019) (same).  Moreover, the fee award need not be proportionate to the damages award.  *Grant v. Martinez*, 973 F.2d 96, 101–02 (2d Cir. 1992).

After determining a reasonable hourly rate, the Court multiplies "that rate by the number of hours reasonably expended to determine the presumptively reasonable fee." *Lilly*, 934 F.3d at 230.  "To calculate . . . attorneys' fees, courts apply the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 79 (2d Cir. 2005) (cleaned up) (quoting *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)).  "[T]here is . . . a strong presumption that the lodestar figure represents a reasonable fee." *Id.* (quoting *G.M.*, 173 F.3d at 84); *accord I.B. ex rel. Z.B. v. N.Y. City Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam).

Where the plaintiff has prevailed on some but not all of his or her claims, the Court looks to whether the claims "involve a common core of facts" or are "based on related legal theories." *Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 90 (2d Cir. 2004).  Where the claims involve a common core of facts or are based on related legal theories, the court focuses "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* (citation omitted).  In that instance, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours

expended on a claim-by-claim basis." *Id.* (citation omitted). By contrast, "the district court should exclude . . . hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). "No fees should be awarded for time spent pursuing a failed claim if it was 'unrelated' to the plaintiff's successful claims in the sense that it was 'based on different facts and legal theories.'" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)). "To account for limited success, courts may make a percentage reduction in the fees sought." *Salustio v. 106 Columbia Deli Corp.*, 2017 WL 5714089, at *2 (S.D.N.Y. Nov. 27, 2017)

The Court first calculates the lodestar amount and then considers what adjustments should be made to it. Counsel seeks fees based on the following hourly rates: $550 per hour for lead counsel Wesley Mullen, $450 per hour for Vincent FitzPatrick and for Michael Weinstock who are described as senior attorneys and the latter of whom is not described as having experience in employment matters, $225 per hour for John Nguyen, a junior associate (reduced to $100 per hour for work he performed as a law clerk before graduation from law school), and $100 per hour for the paralegals. Dkt. No. 132 ¶¶ 6, 12–37. Defendants argue that Plaintiff's rates are excessive and that the reasonable rates in this District are $400 an hour for Mullen, $300 an hour for each of Fitzpatrick and Weinstock, $200 an hour for Nguyen for the time after his graduation from law school, and $75 an hour for the paralegals. Dkt. No. 136 at 9–11.

The Court has considered the *Johnson* factors supplemented by its own knowledge of the relevant market. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96–97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."). In 2020, a court in this District observed, "other courts in this District awarding attorneys' fees in employment discrimination

7

cases have found that the range of fees in this District for seasoned civil rights litigators, particularly those in small firms is between $200/hr and $300/hr." *Angulo*, 2020 WL 4938188, at *17 (internal quotation marks and citation omitted).  Given the protracted nature of the litigation, the Court uses current rates to calculate the lodestar.  *Grant*, 973 F.2d at 100.

Mullen graduated from law school in 2007, was admitted to practice in 2008, and handles a broad range of complex commercial litigation, including business disputes and employment discrimination.  Dkt. No. 132 ¶¶ 13, 15.  His current hourly rate for non-contingency cases is $650 per hour and he states that approximately 75% of the professional time spent by his firm in 2021 and 2022 has been on hourly (non-contingency) cases; however, he does not state how much of *his* time is spent on hourly cases and he offers that "on occasion" his firm has represented clients at discounted rates.  *Id.* ¶¶ 12–18.  In addition, he does not submit evidence that he has developed a particular reputation in the field.  This case, and in particular the claim upon which Plaintiff prevailed, was not particularly complex or difficult.  *See Reiter v. Metropolitan Transp. Auth. Of State of New York*, 2007 WL 2775144, at *4 (S.D.N.Y. 2007).  Plaintiff had to present testimony from one lay witness (his client), there were no novel legal issues, and no need for expert testimony.  The only significant legal briefing on the claim—the post-judgment briefing—was standard for a case of this type.  No time limitations were imposed by the client or the circumstances and the case was not particularly undesirable.  Based on currently prevailing rates, Mullen's time should be billed at no more than $500 an hour.  *See Emamian*, 2022 WL 2056275, at *19 (awarding $500 an hour to experienced civil rights lawyer).

FitzPatrick, described as a senior attorney, is a 2002 law school graduate who worked for a period of time in the litigation department of a New York law firm and for another period of time in-house where his practice included "sensitive employment-related matters."  Dkt. No. 132

¶¶ 20–21.  Plaintiff, however, offers no evidence of his experience in employment-related *litigation*.  In light of this, among other factors, his rate should be reduced to $300 per hour.  *See Angulo*, 2020 WL 4938188, at *17 ("[C]ourts in this District awarding attorneys' fees in employment discrimination cases have found that 'the range of fees in this District for "seasoned civil rights litigators," particularly those in small firms, is between $200/hr and $300/hr.'" (citation omitted)).  Weinstock is a 1998 law school graduate who is "of counsel."  Dkt. No. 132 ¶ 23.  Before entering private practice, he served in the special victims bureau of the Brooklyn District Attorney's Office.  *Id.*  Plaintiff offers no evidence of his experience in employment-related litigation.  *Id.*  His rate too should be $300 per hour.  *See Angulo*, 2020 WL 4938188, at *17.  John Nguyen is an associate who graduated from law school in 2021 and whose application to the New York bar is pending.  *Id.* ¶¶ 27, 29.  A court in this District has awarded fees for a law clerk at $150 an hour.  *See Sanson v. City of New York*, 2021 WL 1191566, at *4 (S.D.N.Y. 2021).  The Court will follow that precedent and approve an hourly rate for Nguyen of $150 per hour for the time after his graduation from law school and $100 per hour for the time during law school.  The hourly rate for the two paralegals of $100 per hour is consistent with rates approved in this District and also is reasonable.  *See Angulo*, 2020 WL 4938188, at *18; *see also S.H. v. New York City Dep't of Educ.*, 2022 WL 254070, at *6 (S.D.N.Y. Jan. 26, 2022); *A.G. v. N.Y.C. Dep't of Educ.*, 2021 WL 4896227, at *6 (S.D.N.Y. Oct. 19, 2021).

Having determined the reasonable hourly rates for each of the attorneys, the Court next turns to the number of hours claimed.  Plaintiff argues that the hours spent on this matter were reasonable.  Plaintiff seeks a fee award based on 1,139 hours of work.  Dkt. No. 132 at 3; Dkt. No. 138-1.  Mullen spent 546.6 hours on the case, FitzPatrick spent 79.5 hours, Weinstock spent 74.7 hours, Nguyen 101.6 spent hours as a junior associate and 6.4 hours as a law clerk, and the

paralegals spent a total of 330.2 hours.  Dkt. No. 132 ¶ 6; Dkt. No. 138-1.  Defendants argue that

the hours were unreasonable.  They contend that the reasonable hours for employment

discrimination lawsuits that go to trial is "under 1000 hours—sometimes well under," Dkt. No.

136 at 17 (quoting *Knox*, 520 F. Supp. 3d at 346), that the time records reflect excessive,

redundant, and otherwise unnecessary billing, and that the hours billed should be reduced for

block-billing, vague entries, excessive hours spent on particular matters, repetitive entries, and

inordinate time for multiple individuals to unnecessarily attend the same conferences and

meetings, *id.* at 16–24.

As a preliminary general matter, "any attorney . . . who applies for court-ordered

compensation in this Circuit . . . must document the application with contemporaneous time

records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the

work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.

1983).  If a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary,"

it should exclude those hours from its calculation of the presumptively reasonable fee.  *Hensley*,

461 U.S. at 434.  However, "[t]here is no precise rule or formula for making these

determinations."  *Id.* at 436.  Because "it is unrealistic to expect a trial judge to evaluate and rule

on every entry in an application," *Carey*, 711 F.2d at 1146, "the court has discretion simply to

deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming

fat from a fee application,'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)

(quoting *Carey*, 711 F.2d at 1146).  Thus, a district court is not required to "set forth item-by-

item findings concerning what may be countless objections to individual billing items."  *Lunday

v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  As the Supreme Court recently noted, "trial

courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal

in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Defendants are incorrect that there is a presumption that any hours above 1,000 spent on an employment discrimination case are unreasonable.  Courts have awarded fees for hours above 1,000 in employment discrimination matters.  *See*, *e.g.*, *Makinen v. City of New York*, 2016 WL 1451543, at *6–7 (S.D.N.Y. Apr. 12, 2016) (awarding fees for over 1,000 hours for discrimination claim); *Reiter*, 2007 WL 2775144, at *22 (same).  The decision in *Knox*, 520 F. Supp. 3d 331, is not to the contrary.  Although the court there observed that "*in most instances the hours sought or awarded [in labor or employment discrimination suits] were under 1000 hours,*" *id.* 346 (emphasis added), it ultimately awarded 2,517 hours (out of a total 5,035 requested), *id.* at 347–48.  The total hours for which Plaintiff seeks an award are not unreasonable on their face.  Mullen tried the case by himself, assisted only by a paralegal.  The case involved factually complex issues regarding workplace safety and whistleblower retaliation; Plaintiff was required to make and respond to numerous motions; trial was adjourned once at the request of Defendants, Dkt. No. 138 ¶ 11; and Plaintiff prepared and argued responses to numerous post-trial motions.  The Court will address *infra* the extent to which such work was relevant to the claim of failure to accommodate.

Defendants are correct, however, that certain entries constitute block-billing, are vague, or request an award for excessive or unnecessary work, even for the discrimination and retaliation claims.  "Block billing is the aggregation of multiple tasks into a single billing entry."  *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 370 n.3 (S.D.N.Y. 2015) (citing *Wise v. Kelly,* 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008)).  "Block billing is not *per se* unreasonable if

11

the court can still determine the reasonableness of the hours claimed." *Resnik v. Coulson*, 2020 WL 5802362, at *6 (E.D.N.Y. Sept. 28, 2020). However, "block-billing can make it exceedingly difficult for courts to assess the reasonableness of the hours billed." *Makinen*, 2016 WL 1451543, at *5 (quoting *L.V. v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010)). In addition, "[c]ourts may deny compensation where the billing information submitted is 'too vague to sufficiently document the hours claimed.'" *Tatum v. City of New York*, 2010 WL 334975, at *7 (S.D.N.Y. Jan. 28, 2010) (quoting *Kirsch*, 148 F.3d at 172); *see Ravina v. Columbia Univ.*, 2020 WL 1080780, at *9 (S.D.N.Y. Mar. 6, 2020) (same).

Certain (but by no means all) of Plaintiff's time entries make it impossible for the Court to determine the reasonableness of the hours billed, either because they reflect block-billing or are vague. For example, an entry for July 19, 2022, reflects that Mullen spent 5.5 hours on the following tasks: "Revise, finalize and file opposition to motion supporting declaration, exhibits; email correspondence and Zoom with A. Castro, B. Eschauz re cite- and record checking, finalizing brief; office conferences with V. Fitzpatrick re final approach." Dkt. No. 132-1 at ECF p. 10. Another entry for Mullen from April 13, 2022 records 5.4 hours for the following: "Work on exhibits, trial witness binders; email correspondence with opposing counsel, client re trial prep; review and circulate order on MIL." *Id.* at ECF p. 52. It is impossible, for example, from the first description to determine how much time was spent on the opposition to the motion and how much spent on the seemingly-unrelated conference regarding a final approach, and from the second description to determine how much time was spent on trial preparation and how much was spent on email correspondence and the nature of that correspondence. Thus, the Court cannot determine "whether the time spent on the combined tasks was reasonable." *Resnik*, 2020 WL 5802362, at *6. A few other entries are vague. For example, the records reflect that Nguyen

spent 7.2 hours on April 25, 2022 on the following task: "Review and organize trial materials; conference with W. Mullen."  Dkt. No. 132-1 at ECF p. 45.  On April 27, 2022, Mullen recorded 4.4 hours for the following: "Follow up re adjournment of trial, email correspondence with nonparty witnesses; teleconference with C. Casmento; email correspondence with opposing counsel."  *Id.* at ECF p. 43.  Even if the Court could construe all of the hours for the first entry to be spent organizing trial exhibits and the hours on the second entry to be emails regarding the adjournment of the trial, those hours would be excessive.

Other hours are clear but excessive.  Plaintiff spent a total of approximately 70 hours on the motion for attorneys' fees in this case and approximately 140 hours on post-trial briefing. Dkt. No. 136 at 22–23.  Although Plaintiff is entitled to fees on the fee application, *see M.H. v. N.Y.C. Dep't of Educ.*, 2021 WL 4804031, at *21 (S.D.N.Y. Oct. 13, 2021), and the post-judgment briefing involved several different legal issues, both figures are excessive.

The Court, however, rejects many of Defendants' arguments.  Defendants complain that the entries for "teleconferences, videoconferences, and other conferences and email correspondences" are vague because they lack detail regarding the purpose of those entries, Dkt. No. 136 at 19, but in many instances the purposes can be discerned from the context.  Defendants also complain about the attendance of a paralegal at depositions and that Mullen prepared for depositions that he never took, *id.* at 20–21, but it is efficient staffing to have a paralegal rather than a second attorney assist at a deposition.  It also is efficient staffing for the senior lawyer on a case to prepare for a deposition but to have a more junior lawyer take it.  Defendants also complain that Plaintiff billed time for preparing for trial twice, *id.* at 21–22, but it was reasonable for Plaintiff to do so particularly because trial was adjourned at the request of Defendants on the eve of jury selection, Dkt. No. 138 ¶ 11.  The Court will not reduce Plaintiff's hours based on

any of these arguments.  The Court also notes that to the extent that time entries are vague, reflect block-billing, or are excessive, some of those vague or excessive hours were recorded by the lower-billing attorneys or paralegals.  After reviewing Plaintiff's records and Defendants' arguments, the Court concludes that a reduction of Plaintiff's hours on this basis is appropriate but only a modest one.  The Court will reduce the number of hours across the board by 10% due to block-billing, vague time entries, or excessive and unnecessary work.

The most significant flaw in Plaintiff's application is that it groups together work on claims upon which Plaintiff prevailed and work on claims upon which he did not prevail.  Those claims arose from entirely distinct sets of facts and involved distinctive legal theories.  Plaintiff's failure to accommodate claim arose from events in February and March 2019.  The relevant events started in February 2019 when Plaintiff requested an iPad and the violation was complete in March 2019 when the iPad was denied to him.  *See* Dkt. No. 51 ¶¶ 56–64; Dkt. No. 120-1.  None of the events that transpired after that date were relevant to his failure to accommodate claim.  By contrast, the events relevant to the retaliation claim occurred in April to June 2019 when Plaintiff ordered a work stoppage and reported safety violations to Defendants and then when Plaintiff's employment was terminated.  *See* Dkt. No. 51 ¶¶ 35–51.[3]  None of the events relevant to the failure to provide Plaintiff an iPad were relevant to those later events.  The two sets of claims involved different legal theories and different elements.  The critical questions with respect to the failure to accommodate included whether Plaintiff suffered from a disability, whether he requested a reasonable accommodation, and whether and why that accommodation was denied to him.  The relevant questions with respect to the retaliation claims included

---

[3] The Amended Complaint also alleged that Plaintiff's employment was terminated in retaliation for his complaint about violation of disability protection statutes.  Dkt. No. 51 ¶ 72.  No evidence was offered in support of that claim and the jury rejected it.

whether Plaintiff reported safety violations, whether his employment was terminated or whether

he voluntarily resigned, and whether—if he was terminated—that decision was based on an

impermissible reason. *See Ravina*, 2020 WL 1080780, at *12 (not awarding fees for failed

claims that were "only marginally related" to the successful claims and where the "failed legal

theories" and the evidence offered in support of them had little in common with the successful

claims); *Reiter*, 2007 WL 2775144, at *13 (reducing fee award by a percentage for an

unsuccessful due process claim).

Moreover, even assuming that the claims were related, Plaintiff achieved only limited

success. He claimed that he suffered $2,571,098 in compensable damages on the discrimination

and whistleblower retaliation claims and that the jury should award him $13 million in damages.

Trial Tr. 708, 710. He did not claim or present any evidence of compensable damages on his

failure to accommodate claim. The jury awarded him no compensable damages. It also awarded

only a small fraction of the punitive damages he suggested was appropriate.

The law does not require the Court to disentangle the time spent on claims that were

meritorious and claims that turned out not to be meritorious. The burden is on Plaintiff to

"maintain billing time records in a manner that will enable a review court to identify distinct

claims." *Hensley*, 461 U.S. at 437. When the time spent on the successful claims "is not readily

ascertainable from counsel's billing records, an across-the-board percentage reduction is

appropriate." *Tatum*, 2010 WL 334975, at *11; *see Reiter*, 2007 WL 2775144, at *13–14.

The amount of time devoted to (and required to be devoted to) the failure to

accommodate claim was minimal in relation to the time devoted to the retaliation claims. Ten

witnesses were deposed in the case, including the project manager for the United States Office of

General Services Administration. Dkt. No. 135 ¶ 7. However, only four witnesses arguably had

15

evidence relevant to the failure to accommodate claim—the three Volmar employees that Plaintiff had included on an email requesting the iPad, and Plaintiff himself.  *Id.* ¶¶ 4, 8.  In addition, the amount of time each of those witnesses were deposed concerning the failure to accommodate claims was minimal as compared to the retaliation claims: approximately 13 pages of the total of 515 pages of deposition of the three Volmar employees were devoted to questions relevant to the failure to accommodate claim.  *Id.* ¶ 8.  This was also true of trial.  Trial of the case lasted five days.  Dkt. No. 129 at 1.  However, questions and argument relevant to the failure to accommodate claim occupied mere minutes of the trial.  The evidence in support of this claim largely boiled down to an email chain, Plaintiff's very brief testimony about an in-person meeting, a single medical record regarding Plaintiff's eyesight, and Plaintiff's own account of his poor eyesight.  *Id.* at 2–6.  There was no expert testimony on this failure to accommodate claim and no other witnesses testified in support of it.  *Id.*  The claims related to reporting safety violations were explored in significantly greater depth.  Moreover, the initial complaint did not even allege failure to accommodate; it alleged only retaliation under New York Labor Law.  Dkt. No. 1.  Thus, the motion practice related to discovery concerned the retaliation claim, and not the failure to accommodate claim.  *See* Dkt. No. 19 (motion to compel focused on discovery related to hiring and firing of Plaintiff, the 26 Federal Plaza contract, and safety records).  So too, Defendants' first motion for summary judgment related only to the retaliation claim.  Dkt. No. 39-21 (Defendants' motion for summary judgment based on res judicata effect of OSHA determination); Dkt. No. 55.  The First Amended Complaint added the allegation that Defendants failed to accommodate Plaintiff's visual disability.  Dkt No. 51 ¶¶ 56–65.  Thereafter, virtually all of the pretrial motion practice related to claims other than the failure

to accommodate claim. *See* Dkt. No. 78 (motions in limine)  Accordingly, the Court reduces the remaining hours (after the reductions reflected above) by 75%.

Taking all of these deductions into account, the Court awards attorneys' fees of $82,903.50 based on the below revised figures:

| Attorney/ Paralegal | Requested Hourly Rate | Reduced Rate | Requested Hours | Reduced Hours |
|---|---|---|---|---|
| Wesley Mullen *Lead Counsel* | $550 | $500 | 546.6 | 122.99 |
| Vincent FitzPatrick *Senior Attorney* | $ 450 | $300 | 79.5 | 17.89 |
| Michael Weinstock *Senior Attorney* | $ 450 | $300 | 74.7 | 16.81 |
| John Nguyen *(as Junior Associate)* | $ 225 | $150 | 101.6 | 22.86 |
| John Nguyen *(as Law Clerk)* | $ 100 | $100 | 6.4 | 1.44 |
| Alleine Castro *Senior Paralegal* | $ 100 | $100 | 249.3 | 56.09 |
| Beeya Echauz *Paralegal* | $ 100 | $100 | 80.9 | 18.20 |

## II.     Costs

Plaintiff seeks costs of $35,572.06 as part of his fee award.  Dkt. No. 132 ¶ 41. Defendants argue that Plaintiff's claimed costs should be reduced by the same percentage as attorneys' fees are reduced and that Plaintiff's request for expert fees should be denied in its entirety.  Dkt. No. 136 at 24–25.

"[T]he Second Circuit has consistently 'held that attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"

*Tarax v. Blossom W. Inc.*, 2022 WL 2132749, at *3 (S.D.N.Y. June 14, 2022) (quoting *TufAmerica Inc. v. Diamond*, 2016 WL 1029553, at *7 (S.D.N.Y. Mar. 9, 2016)).

Plaintiff's costs are comprised of $11,758.11 for ESI storage and processing, $9,300 in expert witness fees, $7,809.40 for deposition transcripts, $3,162.30 for SDNY reporter transcript fees, $1,314.60 for trial materials, $1,206.05 for process servers, $541.21 for printing and binding, $400 for the filing fee, and $80.31 for postage and messengers.  Dkt. No. 132 ¶ 41.

"The same doctrine that requires a reduction in fees due to the lack of success applies equally to costs." *Salustio*, 2017 WL 5714089, at *3.  Here, while Plaintiff would have had to incur certain of the costs in full (such as the filing fee) had his case been limited to the successful failure to accommodate claim, other costs such as those for deposition and trial transcripts and ESI storage and processing would have been dramatically less had the case been so limited. Accordingly, the Court also reduces the costs by 75% for all costs Plaintiff incurred other than the expert witness fees.

For the expert witness fees, Plaintiff argues that he should receive an award for these costs because the expert may have contributed to the award of punitive damages and was necessary to rebut Defendants' expert testimony that Plaintiff had suffered no harm at all.  Dkt. No. 137 at 14–15.  But the expert did not opine on any damages Plaintiff suffered as a result of the failure to accommodate claim; he testified as to the economic loss resulting from Plaintiff's alleged termination.  Dkt. No. 94-1.  And the expert fees cannot be justified on the grounds that the expert was necessary to respond to Defendants' expert.  Defendants' expert was offered in rebuttal because Plaintiff offered an expert.  Plaintiff also did not argue to the jury that the punitive damages award should be based on the amount of compensable damages.  He argued that it should be calculated as a percentage of the $130 million contract Volmar had on the

project at issue.  Dkt. No. 106 at 708.  Plaintiff is thus not entitled to any fee award for the expert.  *See United States v. City of New York*, 2014 WL 347605, at *2 (E.D.N.Y. Jan. 30, 2014) (declining to award fees for expert because plaintiff "did not prevail on the issue for which they sought his testimony"); *Anderson v. City of New York*, 132 F. Supp. 2d 239, 246 (S.D.N.Y. 2001) (concluding that no award of costs for experts was appropriate where plaintiff was unsuccessful in proving sole issue on which there was expert testimony in this case).

### III.   Entry of Judgment

Plaintiff also moves for entry of judgment pursuant to Federal Rule of Civil Procedure 58, with post-judgment interest running from the date of the judgment.  Dkt. No. 131 at 15.  The motion is not opposed and therefore is granted.

## CONCLUSION

Plaintiff's motion for attorneys' fees and costs and for entry of judgment is GRANTED IN PART AND DENIED IN PART.  Plaintiff is awarded attorneys' fees in the amount of $82,903.50 and costs in the amount of $6,568.02 against Defendant Volmar.

The Clerk of Court is respectfully directed to close Dkt. No. 130.


SO ORDERED.

Dated: December 14, 2022
       New York, New York
                                         _____
                                              LEWIS J. LIMAN
                                         United States District Judge